ILUS F. CARTER *versus* SAMUEL A. BRADLEY.

To charge the last indorser, it is not necessary that the first indorser should be notified of demand and non-payment.

The holder may notify him or not at his election, without losing his claim against subsequent parties, who may have been duly notified.

The last indorser, if he wishes his preceding indorser held, should notify him, to do which, he has one day, after being duly notified himself.

Where the notice delivered the indorser misdescribed his name, it was held good if the defendant thereby knew that the notice was intended for him, and that the note therein described was the note in suit — which facts were submitted to the jury.

Notice to Samuel A. Bradbury — which was meant for and delivered to Samuel A. Bradley — held sufficient.

THIS was assumpsit on a promissory note, dated Nov. 5, 1838, for $200, made by Osgood Bradbury, payable to William Bradbury or order, in sixty days and grace, at either of the Banks in Portland, and indorsed by said Bradbury and the defendant.

It appeared in evidence from the testimony of Henry Ilsley, that on Jan. 7th, 1839, he received from the cashier of the Manufacturers' & Traders' Bank, in Portland, notices signed by the cashier and directed to the maker and first indorser at New Gloucester, where they resided, stating that the note was due and unpaid, and requesting payment, which he on the same day put in the post-office at Portland — and that he likewise received a notice from the cashier, of which the following is a copy:

"Manufacturers' & Traders' Bank,
"Portland, Jan. 7, 1839.
"Samuel A. Bradbury:

"A note signed by Osgood Bradbury and indorsed by you for $200 —— cents, became due this day, which is the last day of grace, and is unpaid. You are therefore requested to pay the same. E. GOULD, Cashier."

That this notice he left at Moorhead's, in Portland, where the defendant resided, and it appeared in evidence that the same was on that day delivered in hand to him.

It further appeared that there were three post-offices in New Gloucester, that the maker and first indorser of the note resided at the Upper Gloucester post-office, which was about two miles distant from the New Gloucester post office — that a letter directed to Gloucester would be expected to stop at that office — and that if directed to a person known to be resident at another office, it would be expected that it would be forwarded at the next mail to such office — that the mail passed from the New Gloucester to the upper office every other day.

Upon this testimony SHEPLEY J. before whom the cause was tried, instructed the jury, that the note having been made payable at either of the banks in Portland, it was the duty of the maker to search for it at the several banks in Portland on the day that it fell due and pay it, and that it was not necessary for the holder to cause him to be notified where it was to be found — and that a demand of the maker of payment at any one of the Portland Banks, or by the cashier of the Manufacturers' & Traders' Bank, at his bank, if the note was left there, was a sufficient demand — and submitted it to the jury, whether such an one was proved. That it was not necessary to enable the plaintiff to recover in this suit, that he should prove any notice to the first indorser.

That it was necessary for the plaintiff not only to prove a demand of the maker, but also that on the same day notice of such demand and neglect was given to the defendant.

That if they were satisfied that the defendant received the notice produced on the day stated, that would be sufficient if the defendant thereby came to the knowledge that it was intended for him, and that he knew thereby that the note designed to be described was the note now in suit — and submitted to the jury to decide whether such knowledge was communicated to him by that notice — and that if the plaintiff failed to satisfy them that he had performed all on his part to be performed he could not recover.

The jury found a verdict for the plaintiff, which is to be set aside and a new trial granted, if these instructions were erroneous, otherwise judgment is to be entered upon it.

A written brief by *J. D. Hopkins, Esq.*, for defendant, was furnished the Court — and it was argued orally by *S. Fessenden*, for the same side, and by *F. O. J. Smith*, for the plaintiff.

It was contended for the defendant, that when a note is payable at a place certain, the demand must be made at the place designated. *Smith* v. *Thatcher*, 4 B. & C. 200; *Treacher* v. *Hinton*, Ibid, 413. This was not a note payable at a place certain. *North Bank* v. *Abbott*, 13 Pick. 465.

It was necessary to notify the first indorser, which was not done. Bayley on Bills, 124; *Stanton* v. *Blossom*, 14 Mass. R. 116; *Ex parte Barclay*, 7 Ves. 597; Bayley, 161, 3; *Smedes* v. *Utica Bank*, 20 Johns. 370; *Scott* v. *Lifford*, 9 East, 347; *Langdale* v. *Trimmer*, 15 East, 291.

The notice sent was insufficient. It is not directed to the defendant, and describes a note with but one indorser. *Warren* v. *Gilman*, 3 Shepl. 70; *Thorn* v. *Rice*, 3 Shepl. 263.

For the plaintiff, were cited *Page* v. *Webster*, 3 Shepl. 249; *Smith* v. *Whiting*, 12 Mass. R. 6; *Shed* v. *Brett*, 1 Pick. 401; *Reedy* v. *Seixas*, 2 Johns. Cas. 337; *Edwards* v. *Dick*, 4 B. & A. 212; Bayley on Bills, 163.

The opinion of the Court was delivered by

Weston C. J. — The instructions first given by the Judge, are fully sustained by the case of *Page* v. *Webster*, 15 Maine, R. 249, to which we refer.

The holder of a bill or note is bound to notify all the prior parties, to whom he intends to resort. Chitty on Bills, 295. If he notifies his immediate indorser only, he waives his remedy against a prior indorser; but in running back the series of liabilities, each party receiving seasonable notice, has generally a day to give notice to such as stand before him, by which their liability becomes fixed, whether notified by the holder or not. Bayley on Bills, 263, and the cases there cited. If the plaintiff failed to give seasonable notice to the first indorser, he may have lost his remedy against him, but may charge the defendant, the second indorser, if he has caused him to be legally notified. If the defendant would charge the first indorser,

it became his duty to take care, that due notice was forwarded to him.

It appears, that the defendant had indorsed such a note as is described in the notice, which he is proved to have received. The question is, whether the misnomer in the latter part of the surname, did so vitiate the notice, as to render it legally ineffectual. The jury have found that the defendant knew that the notice was intended for him, and that the note designed to be described therein was the one now in suit. If this was a point to be determined upon inspection of the paper alone, it was more proper that it should have been settled by the presiding Judge. But there were other facts to be considered. The messenger, Ilsley, understood the notice to have been made out for the defendant, and accordingly left it for him with the keeper of the public house, where he boarded. Mr. Moorhead, with whom it was left, must have so understood it, for it appears that he did, on the same day, hand the notice to the defendant. Taking these facts in connection with the description of the instrument declared on in the notice, we are of opinion that they sustain the verdict found by the jury, and that it was a matter properly submitted to their consideration. But if it had rather belonged to the Court to decide this point, as it has been correctly decided, it furnishes no sufficient ground of exception.

*Judgment on the verdict.*